******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BISHOP, J., dissenting. As noted by the majority, the principal issue raised in this appeal requires this court to engage in statutory interpretation. Specifically, our task is to determine whether the General Assembly's 2001 enactment of the National Association of Insurance Commissioners Model Act, as embodied by General Statutes § 38a-702a et seq., entirely replaced provisions of General Statutes § 38a-769 as they related to insurance producers. This appeal further requires us to determine whether the provisions of General Statutes § 46a-80, regarding human rights and opportunities in government employment generally, apply to the licensure of insurance producers. While I agree with the majority's well reasoned opinion that § 38a-702a et seq. supplanted § 38a-369 as it related to insurance producers, I cannot agree with the majority's conclusion that the provisions of § 46a-80 apply to insurance producers. Accordingly, I respectfully dissent.

In 2001, the General Assembly enacted No. 01-113 of the 2001 Public Acts (P.A. 01-113), titled "An Act Concerning the Licensing of Insurance Producers," which largely tracks the National Association of Insurance Commissioners Model Act. In an analysis of the bill, the General Assembly's Office of Legislative Research made the following observation: "The bill also modifies the commissioner's responsibilities in determining whether an applicant is suitable. It requires her to find that such applicant (1) is at least [eighteen] years of age; (2) has not committed any acts that are grounds for denial, suspension or revocation; and (3) where required, has completed a pre-licensing course for the lines of authority applied for. Current law requires the commissioner to satisfy himself that each applicant is properly qualified, trustworthy, and that granting a license is in the public interest." Office of Legislative Research, Amended Bill Analysis for Substitute Senate Bill No. 1096 as amended by Senate Amendments A and B, p. 3. As to any actions that may be grounds for denial, suspension or revocation, the language of the statute states specifically that such grounds are those which are set forth in § 38a-702k, which concerns denial, nonrenewal or revocation of a producer license. In pertinent part, this statute sets forth the bases on which the commissioner may refuse to issue an insurance producer license. They are as follows: "(1) Providing incorrect, misleading, incomplete or materially untrue information in the license application; (2) violating any insurance laws, or violating any regulation, subpoena or order of the commissioner or of another state's commissioner; (3) obtaining or attempting to obtain a license through misrepresentation or fraud; (4) improperly withholding, misappropriating or converting any moneys or properties received in the course

of doing an insurance business; (5) intentionally misrepresenting the terms of an actual or proposed insurance contract or application for insurance; (6) having been convicted of a felony; (7) having admitted or been found to have committed any insurance unfair trade practice or fraud; (8) using fraudulent, coercive or dishonest practices, or demonstrating incompetence, untrustworthiness or financial irresponsibility in the conduct of business in this state or elsewhere; (9) having an insurance producer license, or its equivalent, denied, suspended or revoked in any other state, province, district or territory; (10) forging another's name to an application for insurance or to any document related to an insurance transaction; (11) improperly using notes or any other reference material to complete an examination for an insurance license; (12) knowingly accepting insurance business from an individual who is not licensed; (13) failing to comply with an administrative or court order imposing a child support obligation; or (14) failing to pay state income tax or comply with any administrative or court order directing payment of state income tax." General Statutes § 38a-702k. Importantly, the statute provides elsewhere: "(a) Unless a person is denied a license pursuant to section 38a-702k, any person who has met the requirements of sections 38a-702d and 38a-702e shall be issued an insurance producer license." General Statutes § 38a-702f (a).

The enactment of P.A. 01-113 also impacted § 38a-769 in a manner significant to the issues on review. Prior to the enactment of P.A. 01-113, General Statutes (Rev. to 2001) § 38a-769 (a) provided in relevant part: "Any person, partnership, association or corporation . . . desiring to act within this state as an insurance producer, a public adjuster, casualty adjuster, motor vehicle physical damage appraiser, certified insurance consultant, surplus lines broker or desiring to engage in any insurance-related occupation for which a license is deemed necessary by the commissioner, shall make a written application to the commissioner for a resident license." As a result of P.A. 01-113, the inclusion of "an insurance producer" from the list of those occupations covered by § 38a-769 was eliminated and the statute's catchall reference to "any insurance-related occupation for which a license is deemed necessary by the commissioner" was modified by the addition of the clause "other than an occupation as an insurance producer."

As reasoned by the majority, the clear import of the enactment of P.A. 01-113 was to create an entirely new process for the processing of applications for those desirous of obtaining licensure to produce insurance. To conclude, as argued by the commissioner, that remnants of the old process, which gave the commissioner discretion based on subjective factors in assessing applications for licensure, still apply would require us to ignore the wholesale changes to the statutory scheme for the licensure of insurance producers effectuated by

the adoption of § 38a-702a et seq.

In sum, I agree completely with the majority's analysis that the enactment of P.A. 01-113 had the effect of replacing previous provisions of § 38a-369 with the new and more restrictive provisions of § 38a-702a et seq. Our agreement, however, ends at that point.

In concluding that the commissioner retains discretion to make subjective determinations in processing applications from would-be insurance producers, the majority takes its analysis two steps too far. First, the majority construes the term "shall" in § 38a-702f to mean less than the term's normal connotation, and, secondly, the majority concludes that, notwithstanding the language of § 38a-702a et seq. dealing specifically with insurance producers, the commissioner retains discretion pursuant to § 46a-80 to reject an application to produce insurance on the basis of an applicant's general unsuitability. In reaching this conclusion, the majority may have fashioned a better policy than the General Assembly enacted but, in doing so, I believe, respectfully, the majority has overstepped judicial bounds by creating rather than interpreting statutory law.

In dismissing the direction in § 38a-702f that, unless an applicant has been denied a license pursuant to § 38a-702k, the applicant "shall be issued an insurance producer license," the majority adopts the notion that the term "shall" need not always mean what it says. That is, the term "shall" need not always connote mandatory action. To be sure, decisional law supports the general notion that the use of the term "shall" can denote directory and not mandatory language in certain contexts. Pointedly, we are instructed that when the word "shall" is juxtaposed with a substantive action verb, it creates a mandatory duty. See *Wiseman* v. *Armstrong*, 295 Conn. 94, 101, 989 A.2d 1027 (2010). Our court has expressed the axiom of statutory construction in this manner: "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. . . . If, however, the . . . provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory . . . . Definitive words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature. . . . As we recently noted, the word shall creates a mandatory duty when it is juxtaposed with [a] substantive action verb." (Internal quotation marks omitted.) *State* v. *Jones*, 140 Conn. App. 455, 464, 59 A.3d 320, cert. denied, 308 Conn. 911, 61 A.3d 1099 (2013). Here, the word "shall" cannot fairly be said to regard only a matter of convenience or procedural

nicety as it relates to the substantive subject of the ability of a person or entity to engage in business within the state. Indeed, it could be argued that the use of the term "shall" in this context gives to an applicant not statutorily disqualified, an expectancy in the order of a property right.

In addition to concluding that the term "shall" is not mandatory, the majority concludes that the commissioner retains authority pursuant to General Statutes §§ 46a-80 and 46a-81 to reject an application for lack of suitability. In coming to this view, the majority also concludes that without importing the discretionary provisions of §§ 46a-80 and 46a-81 into the more limiting authority set forth in § 38a-702a et seq., the latter statute would lead to an absurd result. I respectfully disagree.

Section 46a-80 (c) provides, in part, that a person may be denied a license to engage in an occupation in Connecticut by reason of a prior conviction of a crime if "after considering (1) the nature of the crime and its relationship to the job for which the person has applied; (2) information pertaining to the degree of rehabilitation of the convicted person; and (3) the time elapsed since the conviction or release, the state, or any of its agencies, determines that the applicant is not suitable for the position of employment sought or the specific occupation . . . for which the license . . . is sought." The majority reasons that since General Statutes § 38a-702e requires that an applicant for licensure as an insurance producer must utilize the uniform application which, in turn, requires an applicant to disclose any criminal history, it would be absurd to conclude that the commissioner does not have the authority, as set forth in §§ 46a-80 and 46a-81, to deny licensure to one convicted of a crime who has not shown adequate rehabilitation. In reaching its conclusion, the majority appears to have ignored the well accepted axiom of statutory construction that when there are two statutes dealing with the same subject, one more general than the other, the more specific statute will control if the statutes cannot be harmonized. See *Kepner* v. *United States*, 195 U.S. 100, 125, 24 S. Ct. 797, 49 L. Ed. 114 (1904); *Charlton Press, Inc.* v. *Sullivan*, 153 Conn. 103, 110, 214 A.2d 354 (1965). Of course, if the two statutes can be harmonized, then our task is to construe them as consistent with each other, thereby giving effect to both. See *Kupersmith* v. *Kupersmith*, 146 Conn. App. 79, 87, A.3d (2013). I believe this principle is applicable to the issue at hand. In my view, the commissioner must apply the specific provisions of § 38a-702a et seq. and not the provisions of § 46a-80, in assessing an insurance producer application because the inconsistent provisions of the two statutes cannot reasonably be harmonized. In short, the application of the broader and subjective discretionary parameters of § 46a-80 to the insurance producer context would render meaningless the strictures of § 38a-702e and the requirements

of § 38a-702f that any person not disqualified under § 38a-702e shall be given a license to produce insurance. Since the statutes are inconsistent, they cannot be applied without torturing the language of one of them.

Indeed, the General Assembly appears to have recognized the potential conflict between the specific authority of particular departments of government and the authority of government, generally, to consider an applicant's criminal record and the extent of rehabilitation in granting or denying employment or licensure. By the provisions of § 46a-81, the General Assembly has made the provisions of General Statutes §§ 46a-79 through 46a-81 controlling over "any other provisions of law which purport to govern the denial of licenses . . . on the grounds of a lack of a good moral character, or which purport to govern the suspension or revocation of a license, permit, certificate or registration on the grounds of conviction of a crime." On the basis of my review of § 38a-702a et seq., § 46a-81 does not apply to the licensure of insurance producers because that statutory scheme does not grant the commissioner discretion to deny a license due to an applicant's lack of good moral character nor does it permit suspension or revocation of a license on the grounds of conviction of a crime.

In addition to the language of § 46a-81 making that chapter's provisions applicable to certain other governmental contexts, the General Assembly has shown its ability to incorporate § 46a-80 into more specific licensure statutes. For example, General Statutes § 20-316 (a), which delineates the grounds for refusing to license real estate brokers and salespersons provides, in pertinent part: "No license under this chapter shall be denied . . . to any applicant who has been convicted of forgery, embezzlement, obtaining money under false pretenses, extortion, criminal conspiracy to defraud or other like offense or offenses . . . except in accordance with the provisions of section 46a-80." Similarly, General Statutes § 36a-541, concerning the licensure of sales finance companies, while setting forth several criteria for licensing, provides: "Any denial of an application by the commissioner shall, when applicable, be subject to the provisions of section 46a-80." While General Statutes § 36a-489 (a) (1) sets forth the parameters of the banking commissioner's discretion in dealing with licensing applications for mortgage lenders and brokers, that statute provides as well: "The commissioner shall not issue an initial license for a mortgage lender, mortgage correspondent lender or mortgage broker unless the commissioner, at a minimum, finds that: (A) The applicant meets the requirements of subsection (a) of section 36a-488; (B) notwithstanding the provisions of section 46a-80, the applicant, the control persons of the applicant and the qualified individual or branch manager with supervisory authority at the office for which the license is sought have not been convicted

of, or pled guilty or nolo contendere to, a felony in a domestic, foreign or military court during the seven-year period preceding the date of the application for licensing or at any time preceding the date of application if such felony involved an act of fraud, dishonesty, a breach of trust or money laundering, provided any pardon or expungement of a conviction shall not be a conviction for purposes of this subdivision . . . ."

The point of these examples is that they are apt demonstrations of the General Assembly's awareness of the provisions of § 46a-80 and that, when enacting legislation regarding specific areas of licensing, the General Assembly has reflected this awareness by incorporating or delineating the provisions of § 46a-80 from specific licensing legislation. Given the General Assembly's history of having incorporated the provisions of § 46a-80 into certain specific licensing statutes, I believe, respectfully, it is not our place to fill in what we may consider to be a legislative void where the General Assembly has chosen not to do so. That the General Assembly chose not to incorporate § 46a-80 into the scheme for licensing insurance producers should not be ignored.

Finally, we cannot dismiss the clear legislative mandates and limitations of § 38a-702a et seq. on the basis that strict application of the statutory scheme would lead to absurd results. Here, I believe the majority conflates the notion of absurdity as it is used in statutory interpretation with a public policy concern that, perhaps, the commissioner should be vested with the discretion he wishes to exercise in this instance.

In support of the trial court's judgment, the commissioner has argued, with apparent success, that construing § 38a-702a et seq. without also incorporating § 46a-80 into its provisions would lead to the absurd result that, while an applicant must disclose his or her criminal history on the mandated application form, the commissioner, nonetheless, does not have the authority pursuant to § 38a-702a et seq. to deny an application for licensure on the basis of an applicant's criminal background. The commissioner's point in this regard is that in construing § 38a-702a et seq., we must incorporate the provisions of § 46a-80 regarding the allowable treatment of an applicant's criminal record because, otherwise, it makes no sense to require applicants to utilize a form that includes a recitation of one's criminal record. In acceding to this argument, the majority ignores the provision of § 38a-702k, which expressly gives the commissioner the authority to reject an application from one who has been convicted of a felony. Thus, it is entirely reasonable and not absurd that the statutory scheme for the licensing of insurance producers as set forth in § 38a-702a et seq. requires an applicant to set forth his or her past criminal record as the completion of the application provides a vehicle for determin-

ing whether an applicant may be statutorily disqualified for having a felony conviction.

To be sure, it may well be bad public policy not to permit the insurance commissioner the discretion to weigh whether an applicant for an insurance producer license is a trustworthy applicant or a person of good moral character or a person previously convicted of a misdemeanor who has not been rehabilitated, but judicial notions of a beneficial public policy are not part of the court's task in statutory interpretation. Moreover, it is beyond the bounds of statutory interpretation for a court to refuse to enforce the clear language of a statute on the basis that the statute, as written, makes bad public policy. Enacting legislation is uniquely the function of the legislative branch. Fixing flawed statutes is as well. In this instance, I would not affirm the trial court's judgment. Rather, I would reverse the judgment of the trial court and remand this case with direction that the matter be further remanded to the administrative hearing officer for a determination, after a hearing, of whether the applicant is entitled to an insurance producer license on the basis of the criteria and process as set forth in § 38a-702a et seq.

Accordingly, I respectfully dissent.