TARA KUPERSMITH *v.* COREY KUPERSMITH
(AC 34849)

DiPentima, C. J., and Alvord and Harper, Js.

Argued May 28—officially released September 24, 2013

*Mark Stern,* with whom, on the brief, was *Marc T. Miller,* for the appellant (defendant).

*Allen Gary Palmer,* with whom was *Robert M. Wechsler,* for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Corey Kupersmith, appeals from the judgment of the trial court denying his motion to vacate execution, injunction, exemption and other relief (motion to vacate) and granting an award of attorney's fees to his former wife, the plaintiff, Tara Kupersmith. On appeal, the defendant claims that: (1) General Statutes §§ 52-350a and 52-350f prohibit a court from ordering a postjudgment property execution to enforce a family support judgment; (2) the court improperly lifted the temporary suspension it had imposed on implementation of the writ of execution because the 2004 dissolution judgment is void because it did not comply with the child support guidelines, was based upon an inaccurate accounting of the plaintiff's assets, and contained a contractual penalty for failure to pay child support in violation of public policy; and (3) the court abused its discretion in awarding the plaintiff attorney's fees for defending the defendant's motion to vacate.[1] We affirm the judgment of the trial court with respect to the motion to vacate, but reverse the court's award of attorney's fees.

The record reveals the following facts and procedural history. On June 4, 2004, the court rendered a judgment dissolving the parties' marriage. In the judgment, the court incorporated by reference both a joint parenting plan relative to the parties' four children and a separation agreement; both documents were signed by the parties and their respective counsel. The separation agreement provided, inter alia, that the defendant would

---

[1] In his statement of issues, the defendant also claims that the trial court abused its discretion by concluding that the writ of execution was constitutionally enforceable despite mathematical discrepancies on its face. The defendant does not, however, discuss this claim in his brief. "It is well settled that [w]e are not required to review claims that are inadequately briefed." (Internal quotation marks omitted.) *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 163, 20 A.3d 702 (2011). Accordingly, we do not review this claim.

pay the plaintiff alimony in the form of a lump sum payment of $11,700,000 and monthly periodic payments of $30,000; $1500 per child per month in child support; and 85 percent of the expenses incurred in the children's private school education, extracurricular activities, sports, lessons, camp, or any other activity agreed upon pursuant to the joint parenting plan. It further provided that such payments would be subject to accruing interest if they were not timely paid.

Many postjudgment motions were filed by both parties pertaining to compliance with the terms of their separation agreement and joint parenting plan. On July 5, 2007, the parties entered into a stipulation (2007 stipulation), pursuant to the plaintiff's motion for contempt, in which they agreed that the defendant owed the plaintiff one million dollars in satisfaction of two provisions in their separation agreement. After the 2007 stipulation, the plaintiff filed multiple motions for orders and motions for contempt, claiming that the defendant had not complied with the terms of the separation agreement. On July 19, 2010, the plaintiff filed a motion to enjoin the defendant's use of his assets, as she claimed that the defendant had significantly reduced his liquid assets since May, 2009, consistently avoided meeting his support obligations, and was nearly $200,000 in arrears for periodic support payments and payments for the children's education. Pursuant to the plaintiff's motion, the court, *Malone, J.*, issued an order enjoining the defendant from transferring, selling, pledging, placing a lien on, or encumbering (1) any assets received from the repayment of a loan he made to Christina Wilkenson,[2] (2) any assets that he previously had used as security to prevent foreclosure on the property owned by Wilkenson, and (3) his coin collection, gun collection and life insurance policy. On

[2] The record does not reveal the nature of the creditor relationship between the defendant and Wilkenson.

November 23, 2010, Judge Malone, pursuant to the plaintiff's application, issued an order for a prejudgment remedy in favor of the plaintiff in the amount of $750,000.

Thereafter, the defendant filed a motion for order and a motion for modification, and the plaintiff filed two motions for order and a motion for contempt. On February 23, 2011, the parties entered into a stipulation (2011 stipulation) resolving their five outstanding motions. The 2011 stipulation provided that the defendant owed the plaintiff a total sum of $1,050,000, which included: $850,000 for child support arrearage through February, 2011; education expenses arrearage, shared children's expenses arrearage and interest; attorney's fees to prosecute those claims of unpaid obligations; and $200,000 in future education expenses for the period of March 1, 2011, to June 30, 2012. The terms of the 2011 stipulation further provided that "time is of the essence," and it set forth a payment schedule, an interest rate for late payments, and a monetary incentive for the defendant to make timely all payments. In the 2011 stipulation, the defendant offered security for the $1,050,000 owed in the form of a pledge of assets from a hedge fund, a mortgage deed or judgment lien encumbering his Greenwich residence, continuation of the injunction granted by Judge Malone, and a mortgage deed or judgment lien encumbering his real property on Martha's Vineyard.

On November 23, 2011, the plaintiff filed motions for contempt and order, claiming that the defendant had violated the payment terms of the 2011 stipulation. One week later, the court, pursuant to the plaintiff's motions, ordered a property execution in the amount of $300,000 in favor of the plaintiff. On December 15, 2011, the defendant filed a motion to vacate—the motion from which this appeal arises—in which he claimed that "the execution is grounded on a void or voidable

agreement." Specifically, he claimed that provisions of the 2004 dissolution judgment were void because it contained a nonmodifiable term of agreed upon child support, the support award deviated from the child support guidelines without providing justification for the deviation, the support award did not consider as part of the plaintiff's assets $11,700,000 in lump sum alimony, and the separation agreement contained a monetary penalty for failure to pay in violation of the public policy and laws of Connecticut.[3] Further, the defendant claimed that "the execution is improper pursuant to Connecticut statute," and he argued that a postjudgment property execution is an improper remedy for family support judgments pursuant to § 52-350a.

In response, the plaintiff filed an objection to the motion to vacate and sought reimbursement for the attorney's fees she incurred defending the motion. On April 30, 2012, the court heard argument from both parties and testimony from the defendant with regard to the motion to vacate. At the conclusion of that hearing, the court stated that it was going to "suspend the execution of the writ of execution on a temporary basis until . . . the court rule[d] on th[e] jurisdictional [matter]" concerning its ability to issue a writ of execution in this case. The plaintiff then filed an amended affidavit of attorney's fees, and the court gave the defendant one week to challenge the amount or reasonableness of the plaintiff's fee request. The defendant never filed a motion objecting to the reasonableness of the claimed

---

[3] The plaintiff also claimed that the 2011 stipulation was invalid because he was "suffering from several serious debilitating illnesses" and did not have the capacity to enter into the 2011 stipulation, his counsel at the time of the 2011 stipulation did not disclose to him pertinent aspects of his financial situation, the 2011 stipulation was inconsistent with the 2004 dissolution judgment, and the court did not properly consider the child support guidelines before entering orders pursuant to the 2011 stipulation. On appeal, the defendant does not advance these or any other arguments about the validity of the court's judgment accepting the parties' 2011 stipulation.

attorney's fees. On July 10, 2012, the court issued a memorandum of decision, in which it denied the defendant's motion to vacate and ordered the lifting of the temporary suspension on execution of the writ of execution. The court also ordered the defendant to pay $7500 of the plaintiff's attorney's fees incurred defending the motion to vacate within sixty days of the judgment. On July 30, 2012, the defendant filed this appeal.

I

The defendant first claims that the court improperly denied his motion to vacate because a writ of execution is an improper remedy for enforcement of a child support order pursuant to the postjudgment procedures detailed in chapter 906 of the General Statutes. Specifically, the defendant claims that "execution is not available for enforcement in a family law proceeding" pursuant to the plain language of two statutes within chapter 906, §§ 52-350a[4] and 52-350f.[5] He recognizes the

---

[4] General Statutes § 52-350a, which defines the terms used in chapter 906, provides in relevant part: "(7) 'Family support judgment' means a judgment, order or decree of the Superior Court or a family support magistrate for payment of a legal obligation for support or alimony to a spouse, former spouse or child and includes any such order for periodic payments whether issued pendente lite or otherwise. . . .

"(13) 'Money judgment' means a judgment, order or decree of the court calling in whole or in part for the payment of a sum of money, other than a family support judgment. Money judgment includes any such money judgment of a small claims session of the Superior Court, any foreign money judgment filed with the Superior Court pursuant to the general statutes and in IV-D cases, overdue support in the amount of five hundred dollars or more accruing after the entry of an initial family support judgment. . . ."

[5] General Statutes § 52-350f provides: "A money judgment may be enforced against any property of the judgment debtor unless the property is exempt from application to the satisfaction of the judgment under section 52-352a, 52-352b, 52-352d or 52-361a or any other provision of the general statutes or federal law. The money judgment may be enforced, by execution or by foreclosure of a real property lien, to the amount of the money judgment with (1) all statutory costs and fees as provided by the general statutes, (2) interest as provided by chapter 673 on the money judgment and on the costs incurred in obtaining the judgment, and (3) any attorney's fees allowed pursuant to section 52-400c."

facial discrepancy between that interpretation of the statutory scheme of chapter 906 and the language of General Statutes § 46b-84 (a), which provides in relevant part that "[a]ny postjudgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of child support," but he argues that this court previously has resolved this apparent conflict and cites *Barber* v. *Barber*, 114 Conn. App. 164, 968 A.2d 981, cert. denied, 292 Conn. 915, 973 A.2d 661 (2009), as support for his position. We conclude that the guidance provided by *Barber* is inapplicable in this matter because, in that case, this court held only that the plaintiff had failed to establish a prima facie case for a breach of contract claim because she had not submitted evidence of the arrearage, which she claimed constituted the breach.[6] Id., 170. Further, we conclude that, through a 2003 amendment to § 46b-84 (a), it clearly was the legislature's intent to allow a party to utilize a writ of execution to secure delinquent child support payments.

This case presents an issue of statutory construction, which is a "[question] of law, over which we exercise plenary review." (Internal quotation marks omitted.) *Gianetti* v. *Rutkin*, 142 Conn. App. 641, 650, 70 A.3d 104 (2013). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the

---

[6] The defendant relies on dicta in *Barber* where this court stated in passing that, pursuant to § 52-350a (13), "most family support judgments" are exempt from § 52-350f. *Barber* v. *Barber*, supra, 114 Conn. App. 165. This court in *Barber*, however, limited its consideration to whether the trial court properly "conclud[ed] that a former spouse may not enforce a judgment incorporating a stipulated agreement for child support *without introducing evidence of the arrearage allegedly outstanding and unpaid.*" (Emphasis added.) Id., 165–66. Such is not the case here, nor is the holding in *Barber* relevant to any of the defendant's claims on appeal.

statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Tabone*, 279 Conn. 527, 534–35, 902 A.2d 1058 (2006).

"In construing two seemingly conflicting statutes, we are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . Accordingly, [i]f two statutes appear to be in conflict but can be construed as consistent with each other, then the court should give effect to both." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 32, 818 A.2d 37 (2003). "[I]n the absence of a construction that harmonizes the two, both statutes can be given effect only when they do not conflict." *State* v. *Tabone*, 292 Conn. 417, 433, 973 A.2d 74 (2009). When two statutes conflict, however, "[i]t is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . Where there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or

subject within the scope of a general provision, then the particular provision must prevail; and if both cannot apply, the particular provision will be treated as an exception to the general provision. . . . Additionally, [i]f the expressions of legislative will are irreconcilable, the latest prevails . . . ." (Citation omitted; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 552–53, 46 A.3d 112 (2012).

We begin by setting forth the relevant statutory provisions. The statutes pertaining to postjudgment procedures are set forth in chapter 906 of the General Statutes. Section 52-350f, which became law in its current form as part of No. 83-581 of the 1983 Public Acts (P.A. 83-581), provides in relevant part that a property execution may be used to secure a "money judgment." In P.A. 83-581, the legislature also promulgated § 52-350a, which defined "money judgment" as an "order or decree of the court calling in whole or in part for the payment of a sum of money, *other than a family support judgment* . . ." and a "family support judgment" as "a judgment, order or decree of the Superior Court or a family support magistrate for payment of a legal obligation for support or alimony to a spouse, former spouse or child and includes any such order for periodic payments whether issued pendente lite or otherwise." (Emphasis added.) General Statutes § 52-350a (13) and (7); P.A. 83-581.[7]

The statutes governing family law are set forth in title 46b of the General Statutes. In 2003, § 46b-84 (a) was amended by No. 03-130 of the 2003 Public Acts to include the sentence: "Any postjudgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in

---

[7] We note that the language "or family support magistrate" was added to § 52-350a (7) in No. 96-268 of the 1996 Public Acts. This language does not affect our analysis, and we therefore conduct our analysis referencing the promulgation of § 52-350a (7) and (13) in P.A. 83-581.

connection with a final order for the periodic payment of child support."[8] Thus, on its face, the 2003 amendment to § 46b-84 (a) can be read to conflict with the chapter 906 statutes, which were promulgated decades earlier and seemingly exclude the ability to enforce a family support judgment through the use of a property execution.

Having determined, as directed by § 1-2z, that § 46b-84 (a) is not plain and unambiguous because it facially conflicts with § 52-350a (7) and (13), we follow the further direction of § 1-2z and look for interpretive guidance to the legislative history and circumstances surrounding the enactment of § 46b-84 (a), to the legislative policy it was designed to implement, and to its relationship to existing legislation and common-law principles governing the same general subject matter. Because, pursuant to §§ 52-350a and 52-350f, the general language that seems to prohibit utilization of chapter 906 enforcement procedures for family support judgments was already the law when the legislature promulgated the 2003 amendment to § 46b-84 (a), which added the language allowing "[a]ny postjudgment procedure afforded by chapter 906 . . . to secure the present and future financial interests of a party in connection with a final order for the periodic payment of child support," we look to the intent of the legislature in promulgating the subsequent legislation related to the enforcement of final child support orders.

The language in question was added as an amendment to Senate Bill No. 859, 2003 Sess., and it was debated

---

[8] Number 03-130 of the 2003 Public Acts contained similar language pertaining to the postjudgment procedures available in chapter 906 and the enforcement of alimony payments. It amended General Statutes § 46b-82 by adding subsection b, which provides: "Any postjudgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of alimony." General Statutes § 46b-82 (b).

on May 20, 2003. Representative Gerald M. Fox III introduced the amendment, because it was "necessary to clear up the law, especially in a postjudgment scenario to allow for security." 46 H.R. Proc, Pt. 11, 2003 Sess., p. 3468. As to why it was necessary to clear up the law, Representative Fox stated that "[a] perfect example would be a divorce with an order for support and an order for alimony. The husband has assets within the jurisdiction. The husband has left the jurisdiction. The husband refuses to abide by the order of the court. Under current law, that individual woman, spouse, former spouse, has to continually come back into court on a continuous process for contempt to collect the asset, collect the amount that is owed to her. If, in fact, he removes the asset, she has to chase him. This [amendment] would allow her to secure that debt that has been ordered paid to her so that she has a reasonable and less difficult task in collecting it on a regular basis." Id., pp. 3468–69.

Representative Robert M. Ward clarified that the intention of the amendment was to facilitate the payment of the support obligations of one who has defaulted, rather than to speculate about future obligations: "[T]he court has discretion. . . . If an individual defaults on a payment, I agree with what Representative Fox indicates that it is appropriate, once you've defaulted on an order, that there be a right to secure . . . ." Id., pp. 3473–74. Representative Ward continued: "[I]f it's a postjudgment procedure . . . you could lien for the entire amount, but the indication here is that's only when somebody is defaulted . . . ." Id., p. 3474.

Representative Fox then addressed a hypothetical scenario posed by Representative Robert Farr, stating: "Can the person [who is owed money stemming from a defaulted payment of a dissolution judgment] go into court and seek a motion for contempt? I think the answer to that is yes. If, in fact, this [amendment]

becomes the law, as part of that, and I would assume it would still be in family court, as part of that pending action or postjudgment procedure, can that person now, if this [amendment] becomes law, also go in and attempt to *seek an attachment on real estate to secure the payments that are in default and to secure the order that has been previously entered?* If this [amendment] is passed, I believe the answer to that is yes." (Emphasis added.) Id., p. 3476.

The legislative history makes it clear that the amended language of § 46b-84 (a) was enacted with the intention that it would enable a party to address the default of a final order for child support, or alimony; see footnote 8 of this opinion; through utilization of the postjudgment procedures set forth in chapter 906. The intention behind the promulgation of § 46b-84 (a), therefore, clearly conflicts with the language in §§ 52-350a and 52-350f restricting family support judgments.

Following our established principles of statutory interpretation, we attempt to reconcile conflicting statutes in a manner that allows for their coexistence. See *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services.*, 293 Conn. 363, 377–78, 977 A.2d 650 (2009). The 2003 amendment to 46b-84 (a) was promulgated decades after the general restrictive language in §§ 52-350a and 52-350f was existing law. Also, the 2003 amendment is more specific. Number 03-130 of the 2003 Public Acts addressed a postjudgment collection of alimony or child support after a dissolution judgment, as does § 52-350a. Section 46b-84 (a), however, is within the specific title of the General Statutes reserved for an evolving compendium for family law, as opposed to § 52-350a, which governs the postjudgment procedures for all civil actions. Because § 46b-84 (a) is more specific and was promulgated later, we conclude that where the language of § 52-350a and § 46b-84 (a) conflicts, § 46b-84 (a) must prevail.

Permitting chapter 906 procedures in certain family support judgments as a way of ensuring compliance with support obligations is consistent with the public policy of this state. "We previously have concluded that the statutory scheme regarding child support enforcement evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." (Internal quotation marks omitted.) *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 735, 830 A.2d 228 (2003). "Both state and national policy has been, and continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support. . . . Child support is now widely recognized as an essential component of an effective and comprehensive family income security strategy. . . . As with any income source, the effectiveness of child support in meeting the needs of children is, of necessity, increased when payments are made regularly and without interruption." (Citations omitted; internal quotation marks omitted.) *Sablosky* v. *Sablosky*, 258 Conn. 713, 721, 784 A.2d 890 (2001).

The foundation of the property execution in this case is the monetary terms of the 2011 stipulation judgment and, therefore, a sum certain.[9] The 2011 stipulation captured the defendant's arrears at that time, as well as an agreed upon sum owed to cover the following defined months of parental responsibility. The facts of this case therefore present the type of family support payments in default for which the legislature sought to permit the use of postjudgment procedures when it enacted § 46b-84 (a). Accordingly, the court properly determined that the writ of execution was a permissible postjudgment procedure in this case.

[9] We note that a "money judgment" for chapter 906 purposes must be a sum certain. *Cooke* v. *Cooke*, 99 Conn. App. 347, 351–52, 913 A.2d 480 (2007).

## II

The defendant next claims that the court improperly lifted the temporary suspension it placed on implementation of the plaintiff's writ of execution because the 2004 dissolution judgment was flawed. Specifically, the defendant argues that (1) the judgment deviated from the child support guidelines without providing justification for the deviation, (2) it was based upon an inaccurate accounting of the plaintiff's assets that did not include the $11,700,000 lump sum alimony payment that the plaintiff was awarded, and (3) the agreed upon language of the judgment contained a monetary penalty for failure to pay in violation of the public policy and the laws of Connecticut.[10] We decline to review the defendant's claims regarding a judgment from which an appeal was not taken.

"The judgment rendered in an action for dissolution of a marriage is final and may not be opened or set

[10] The subject of this appeal, the denial of the defendant's motion to vacate, is based on the 2011 stipulation, which was an agreement by the parties, made with the assistance of counsel, with regard to the amount the defendant owed the plaintiff in delinquent payments from the 2004 dissolution judgment. The defendant now, after executing both the 2007 stipulation and the 2011 stipulation, argues that the 2004 settlement agreement contained an improper penalty clause rather than a liquidated damages clause.

The court found that the parties, in 2004, agreed to a "nontaxable default penalty," just as the parties had in *Dougan* v. *Dougan*, 301 Conn. 361, 364, 21 A.3d 791 (2011). In *Dougan*, our Supreme Court held that the nontaxable default penalty was enforceable by judicial estoppel. The court's rationale for that holding is wholly applicable to this case: "First, both the [defendant] and his attorney were aware of and understood the terms of the interest provision at the time that they presented the stipulated agreement to the court, represented to the court that the agreement was fair and reasonable and asked the court to incorporate the agreement into the judgment of dissolution. Second, by now asking that the court refuse to enforce the provision, the [defendant] is taking a position clearly inconsistent with his previous position. Third, if the [defendant] were allowed to ask the court to invalidate this particular provision of the agreement that entitles the [plaintiff] to a substantial sum of money as interest for the [defendant's] failure to make a timely payment under the agreement, the [defendant] would derive an unfair advantage from this change of position." Id., 374–75.

aside unless a motion to do so is filed, pursuant to Practice Book [§] 326 [now § 17-4], within four months from the date of its rendition. . . . After that period, absent waiver, consent or other submission to jurisdiction, a court lacks the power to modify or correct a judgment other than for clerical reasons. . . . A judgment rendered may be opened after the four month limitation if it is shown that the judgment was obtained by fraud, in the absence of actual consent, or because of mutual mistake." (Citations omitted; internal quotation marks omitted.) *Richards* v. *Richards*, 78 Conn. App. 734, 739, 829 A.2d 60, cert. denied, 266 Conn. 922, 835 A.2d 473 (2003). "Unless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs in the tribunal's conclusive decision. . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal." (Citation omitted; internal quotation marks omitted.) *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 876, 675 A.2d 441 (1996).

The defendant here does not argue that the judgment was obtained by fraud, in the absence of actual consent, or because of mutual mistake, but rather he argues that his collateral attack on the 2004 dissolution judgment is an exception to the aforementioned well established procedural precedent. Referring to our Supreme Court's decision in *Maturo* v. *Maturo*, 296 Conn. 80, 92, 995 A.2d 1 (2010), the defendant argues that the court, in 2004, used an incorrect standard for computing the amount of support to award in a situation where the parties' annual income exceeded the income range set forth in the schedule of basic child support obligations. We are not persuaded that the court used the improper standard,[11] and, more to the point, we are unconvinced

[11] In its memorandum of decision, the trial court concluded that the 2004 dissolution judgment complied with the child support guidelines at the time,

that *Maturo* requires a retroactive application of the current child support guidelines to a dissolution judgment rendered six years before our Supreme Court decided *Maturo*. Our Supreme Court has recognized that there are certain cases in which the judgment of the trial court should be revisited in order to properly consider the child support guidelines. See, e.g., *Maturo* v. *Maturo*, supra, 83 (direct appeal of dissolution judgment); *Tuckman* v. *Tuckman*, 308 Conn. 194, 196, 61 A.3d 449 (2013) (same); *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 541, 46 A.3d 112 (2012) (direct appeal from denial of motion to modify); *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 361, 999 A.2d 721 (2010) (direct appeal of dissolution judgment). This, however, is not such a case; the defendant has not properly appealed from the court's support determination and is attempting to launch a collateral attack on the underlying judgment through an appeal of the denial of a motion that he filed nearly eight years after the judgment was rendered. We will not entertain such a claim.

III

The defendant next claims that the court abused its discretion in awarding the plaintiff a portion of the

and it cited *Battersby* v. *Battersby*, 218 Conn. 467, 471–72, 590 A.2d 427 (1991), as the controlling law when the support order was entered. The trial court found that the court, in 2004, entered a support determination in accordance with the plaintiff's submission, which provided that the parties' income exceeded the maximum weekly net income of the child support guidelines and provided two grounds on which deviation was appropriate. The court further found that both parties were canvassed at length about the separation agreement and that both parties' affidavits were scrutinized by the court prior to rendering the dissolution judgment. The court concluded that "[t]here is no evidence that [the court that rendered the 2004 dissolution judgment] failed to properly apply the guidelines."

The court also noted that the defendant did not submit a child support guidelines worksheet at the time of the dissolution. "[A] party who fails to submit a child support guidelines worksheet is precluded from complaining of the alleged failure of the trial court to comply with the guidelines and . . . we will not review such a claim." (Internal quotation marks omitted.) *Gentile* v. *Carneiro*, 107 Conn. App. 630, 655, 946 A.2d 871 (2008).

attorney's fees incurred by the plaintiff in defending the defendant's motion to vacate.[12] We agree.

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . .

"[T]his state follows the general rule that, except as provided by statute or in certain defined exceptional circumstances, the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser.[13] . . . That rule does not apply, however, where

---

[12] The plaintiff does not address this claim in her appellate brief.

[13] "[T]he common law rule in Connecticut, also known as the American Rule, is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . One such statutory exception, codified at General Statutes § 46b-62, provides in relevant part that the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [General Statutes §] 46b-82. Section 46b-82, in turn, permits the court to take into consideration such factors as the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [General Statutes § 46b-81].

"We interpreted these statutory provisions in *Maguire* v. *Maguire*, 222 Conn. 32, 608 A.2d 79 (1992), to mean that an award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders. . . . In the present case, the trial court made no finding that the plaintiff either lacked ample liquid assets to pay for attorney's fees, or that failure to award attorney's fees [would]

the opposing party has acted in bad faith. . . . It is generally accepted that the court has the inherent authority to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. . . . This bad faith exception applies, not only to the filing of an action, but also in the conduct of the litigation. . . . It applies both to the party and his counsel. . . . Moreover, the trial court must make a specific finding as to whether counsel's [or a party's] conduct . . . constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers to impose attorney's fees for engaging in bad faith litigation practices." (Internal quotation marks omitted.) *Richter* v. *Richter*, 137 Conn. App. 231, 235–36, 48 A.3d 686, cert. denied, 307 Conn. 926, 55 A.3d 568 (2012).

"[A] litigant seeking an award of attorney's fees for the bad faith conduct of the opposing party faces a high hurdle. . . . To ensure . . . that fear of an award of attorney's fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . and a high degree of specificity in the factual findings of [the] lower courts. . . . Whether a claim is colorable, for purposes of the bad-faith exception, is a matter of whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts had been established. . . . To determine whether the bad-faith exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example,

undermine the court's other financial orders. Therefore, § 46b-62 is not implicated in this appeal." (Citations omitted; internal quotation marks omitted.) *Berzins* v. *Berzins*, 306 Conn. 651, 657–58, 51 A.3d 941 (2012).

a party's use of oppressive tactics or its wilful violations of court orders; [t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation." (Citation omitted; internal quotation marks omitted.) *Berzins* v. *Berzins*, 306 Conn. 651, 662, 51 A.3d 941 (2012). In short, to award attorney's fees under the bad-faith exception, "the trial court must find *both* that the litigant's claims were entirely without color *and* that the litigant acted in bad faith." (Emphasis in original.) Id., 663.

In this case, both the plaintiff and the defendant requested attorney's fees with respect to the motion to vacate. The court found the following facts with regard to each party's claim. "The [defendant] has offered no evidence of the amount of attorney's fees claimed or incurred, and that under all the facts and circumstances, he has provided the court with no basis to make such an award. On the other hand, the [plaintiff] has provided the court with an amended affidavit of fees. The court gave the [defendant] ample opportunity to review and request a hearing. The court finds that a portion of the attorney's fees incurred by the [plaintiff] are fair and reasonable under the circumstances, *in large measure due to the [defendant's motion to vacate] which was so lacking in a reasonable basis in fact and law, so that the court draws the conclusion that it was interposed for purposes of delay and was not made in good faith.*"[14] (Emphasis added.)

The court found generally both that the defendant's motion was entirely without color and that he acted in bad faith, yet the court did not support that finding with factual specificity. Cf. *Maris* v. *McGrath*, 269 Conn. 834, 848, 850 A.2d 133 (2004); *Richter* v. *Richter*, supra, 137 Conn. App. 233–35. The sole factual finding on

[14] The standard definition of bad faith is the absence of good faith. *Habetz* v. *Condon*, 224 Conn. 231, 236–37, 618 A.2d 501 (1992).

which the court determined that the defendant's motion to vacate was made in bad faith was its conclusion that the motion was "lacking in a reasonable basis in fact and law . . . ." Although we agree with the court's determination that the plaintiff is permitted to secure the debt owed to her through a property execution, we do not agree with the court that the defendant's motion to vacate was entirely without color. Because the court made no other findings of fact to support its conclusion that the defendant filed his motion in bad faith, we conclude that the court abused its discretion in awarding attorney's fees of $7500 to the plaintiff.

The judgment is reversed only as to the award of attorney's fees and the case is remanded with direction to vacate that award. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.