******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# M. S. *v.* M. S.*
## (AC 46005)

Alvord, Cradle and Suarez, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court denying her postdissolution motion for contempt. In June, 2017, approximately three years after the judgment of dissolution, the court approved an agreement of the parties setting the plaintiff's child support obligation at $2600 per month until June 30, 2019, and ordered that, after that date, child support would be modified on the basis of the child support guidelines. Thereafter, the defendant filed motions for modification and for contempt, alleging that, although the parties had been directed to recalculate child support payments on June 30, 2019, in accordance with the guidelines, the plaintiff unilaterally had decreased his child support payments in accordance with his own calculations. Subsequently, the court issued an order in March, 2021, which modified the plaintiff's child support obligations prospectively to $495 per week. Thereafter, the defendant filed a motion for contempt alleging, inter alia, that the plaintiff was in contempt of the court's June, 2017 order, in that the $2600 monthly payment order had remained in effect until the court's March, 2021 order, that he had unilaterally reduced the amount of his child support payments in July, 2019, and that he owed an arrearage. The court denied the motion for contempt and entered remedial orders limited to the plaintiff's compliance with the March, 2021 order to pay $495 per week. The defendant claimed on appeal that the court misinterpreted the June, 2017 order. *Held* that, although the trial court did not abuse its discretion in declining to find the plaintiff in contempt, the court erred in failing to determine the amount of the plaintiff's arrearage attributable to his noncompliance with the June, 2017 child support order: the plaintiff was obligated to pay $2600 monthly from July 1, 2019, until the court-ordered modification in March, 2021, as the terms of the June, 2017 order contemplated a judicial determination of the plaintiff's child support obligation following a consideration of the child support guidelines; moreover, an interpretation of the June, 2017 order that would condone the plaintiff's unilateral modification of

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

his child support payments solely based on his understanding of the guideline amount would be inconsistent with the purpose of child support and its governing statutory scheme and, thus, the plaintiff's unilateral modification in his child support payments prior to the court-ordered modification violated the June, 2017 order; accordingly, this court remanded the case to the trial court for a hearing to identify properly any arrearage owed to the defendant for the period between July 1, 2019, and the March, 2021 order and to establish the terms for the payment of that arrearage.

Argued April 8—officially released July 2, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford, where the court, *Heller, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Colin, J.*, modified the plaintiff's child support obligation in accordance with the parties' agreement; subsequently, the court, *M. Moore, J.*, granted the defendant's motion to modify child support; thereafter, the court, *McLaughlin, J.*, denied the defendant's motion for contempt, and the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*M. S.*, self-represented, the appellant (defendant).

*Opinion*

ALVORD, J. In this postjudgment dissolution matter, the self-represented defendant, M. S., appeals from the judgment of the trial court denying her motion for contempt. On appeal, the defendant claims that the court improperly construed a child support order and found that the plaintiff, M. S., did not owe an arrearage.[1] We

---

[1] The plaintiff did not file a brief in this appeal. Consequently, on January 11, 2024, this court issued an order stating that "the appeal shall be considered on the basis of the [defendant's] brief, the record, as defined by Practice Book [§] 60-4, and oral argument, if not waived by the [defendant] or the court. Pursuant to Practice Book [§] 70-4, oral argument by the [plaintiff] will not be permitted." On April 2, 2024, the self-represented plaintiff filed a motion to set aside the order and a request to mark over oral argument scheduled for April 8, 2024, both of which were denied.

affirm in part and reverse in part the judgment of the trial court.[2]

The following facts and procedural history are relevant to our resolution of this appeal. The court, *Heller, J.*, dissolved the parties' marriage on January 2, 2014. At the time of the dissolution, the parties had three minor children. The judgment of dissolution incorporated by reference the parties' separation agreement dated December 3, 2013 (separation agreement). The separation agreement provided, inter alia, that the plaintiff would pay the defendant "child support pursuant to the child support guidelines," and stated a support order in the amount of "approximately $1650" monthly. It further provided that, "[a]s the parties are to 'true up' their incomes net of taxes for purposes of calculating the payment of alimony from time to time as set forth herein below, at the time those 'true ups' are conducted, child support shall also be recalculated pursuant to the requirements of the . . . child support guidelines." Article XI of the separation agreement, titled "True Up Calculation," provided a semiannual process by which the parties were required to "exchange necessary information regarding their respective employment incomes and deductions to allow for an accurate 'true up' of their combined net employment incomes . . . ." An accountant would then "determine for the parties whether monies paid in the prior six months meet the criteria of an equal division of net employment incomes."[3]

---

[2] The defendant also claims on appeal that the court improperly denied her motion to reargue. Because we reverse in part the judgment of the court denying the defendant's motion for contempt, we need not separately address the defendant's claim with respect to the denial of the motion for reargument. See *Moore* v. *Moore*, 216 Conn. App. 179, 185 n.1, 283 A.3d 994 (2022).

[3] Section 11.1 of the separation agreement provided: "The parties agree that for each year the [plaintiff] is obligated to pay alimony and/or child support to the [defendant] for her benefit and that of the children, the parties shall exchange necessary information regarding their respective employment incomes and deductions to allow for an accurate 'true up' of their

On April 5, 2017, the defendant filed a motion to modify the parties' separation agreement, alleging that the "true up" process set forth therein for alimony and child support was too burdensome, expensive, and unclear. She represented that no "true up" had taken place since the date of the dissolution and requested that Article XI be stricken from the separation agreement. Also on April 5, 2017, the defendant filed a motion for contempt, alleging, inter alia, that the plaintiff, commencing January 1, 2017, unilaterally had reduced his combined child support and alimony payments from the $2600 amount he had paid since January 1, 2014, to $620.

On June 27, 2017, the court, *Colin*, *J.*, approved an agreement of the parties, which set the plaintiff's child support obligation at $2600 per month until June 30,

combined net employment incomes pursuant to the terms set forth above. These true ups will be for the period ending June 30 of each year to be completed no later than July 31 and December 31, to be completed no later than January 30 of the following calendar year, thus giving sufficient time to the chosen accountant to determine for the parties whether monies paid in the prior six months meet the criteria of an equal division of net employment incomes. In the event it is determined that there is either an underpayment or overpayment of child support and/or alimony, the party who owes the money to be paid will do so over the course of 90 days in three, end of month installments. For example, for the June 30 calculation, due July 31, the under/over payment would be satisfied on July 31, August 31 and September 30, and the under/over payment for the period ending December 31, to be calculated by January 30, would be paid in three installments on January 30, February 28 and March 31. In order for each party to determine the accuracy of the calculations to be made, each shall submit to the other within one business week after June 30 and December 31 true copies of his or her year to date paystub information or written proof from his or her employment of gross and net income received to date, as well as any applicable W2's, 1099's and relevant information that would help the [plaintiff] or [defendant] assess the accuracy of the calculations. The parties also agree that if they select one accountant to assist them with these calculations, then each shall pay said accountant 50% of the charges for said accountant's services to perform the requisite work. If they select separate accountants, then each will be responsible for the cost of his or her own accountant's services."

2019 (June, 2017 order). The June, 2017 order further provided that, after June 30, 2019, "child support will be modified based on the [child] support guidelines." The June, 2017 order also removed the "true up" process and stated that all arrears regarding child support and alimony were to be considered resolved.

On September 29, 2020, the defendant filed a motion for modification. Therein, she alleged that, pursuant to the June, 2017 order, the parties were directed to recalculate child support in accordance with the child support guidelines on June 30, 2019. The defendant alleged that, despite the plaintiff's salary having increased in a manner that represented a substantial change in circumstances, he had "self-calculated without agreement what he claims to be his child support obligation and made monthly payments that reflected his own self-calculation." The defendant claimed that the plaintiff had decreased his monthly child support payment contrary to the child support guidelines, he owed $9600 in arrearages, and he refused to provide documentation to support his self-calculation. Also on September 29, 2020, the defendant filed a motion for contempt, in which she reiterated her allegations that the plaintiff unilaterally had decreased his child support payment notwithstanding a substantial increase in his earnings and that he had refused to provide documentation supporting his self-calculations. See footnote 8 of this opinion.

On March 24, 2021, the court, *M. Moore, J.*, issued a memorandum of decision resolving the September, 2020 motion to modify (March, 2021 order). The court modified the plaintiff's child support obligation to $495 per week. The court ordered the child support to be paid by immediate wage withholding and ordered the plaintiff to pay the defendant directly until his paycheck reflected the deduction.

On April 12, 2021, the defendant filed another motion for contempt, in which she alleged that the plaintiff had failed to make weekly child support payments following the court's March, 2021 order. The defendant also alleged that the plaintiff was in contempt of the June, 2017 order, in that the $2600 monthly payment order had remained in effect until the court's March, 2021 order and the plaintiff unilaterally had reduced the amount of his child support payment beginning in July, 2019, and further that he had accrued a child support arrearage of $16,371.43.

On January 19, 2022, the court, *McLaughlin, J.*, held a hearing on the motion for contempt. Both parties, who were self-represented, testified, and the court admitted into evidence certain documents. On February 16, 2022, the court issued a decision. The court first found both the June, 2017 order and the March, 2021 order to be clear and unambiguous. Regarding the June, 2017 order, the court stated: "The defendant argued that the June, 2017 order required the plaintiff to continue paying $2600 a month until the plaintiff sought a modification from the court. The defendant is misreading the June, 2017 . . . order. The June, 2017 order requires the plaintiff to pay child support in accordance with the child support guidelines. There is no stated specific amount. The plaintiff testified that he paid child support up through the court's March, 2021 order based on his understanding of the child support guidelines amount. The defendant failed to prove by clear and convincing evidence that the plaintiff violated the June, 2017 . . . order let alone that he violated the order wilfully. The plaintiff is not in contempt of those orders."

Regarding the defendant's claim that the plaintiff violated the March, 2021 order, the court stated: "Pursuant to [this order], the plaintiff is to pay child support in the amount of $495 by immediate wage withholding. At the commencement of the March, 2021 order, there was

delay in the plaintiff paying the required child support until the immediate wage withholding went into effect. The parties attempted to resolve their dispute regarding arrears of child support unsuccessfully. The plaintiff testified that in December, 2021, he started a new job. Whether there should be a modification of child support based on the plaintiff's new position is not before the court. The immediate wage withholding in the amount of $495 is still in effect.

"There was considerable confusion between the parties regarding the amounts of child support to be paid. This confusion is animated because the parties do not communicate in an effective manner. Based on the confusion over the timing of the child support and the amounts due and owing, the court finds no wilful violation of the court's order. There is no contempt."

The court entered a remedial order limited to the plaintiff's compliance with the March, 2021 order to pay $495 per week in child support. For the forty week period of March 24, 2021, through December 31, 2021, the court found that the plaintiff owed a total of $19,800 in child support. The court credited the plaintiff's calculations that he paid $18,315 for that period. Accordingly, the court found that the plaintiff owed $1485 in child support.[4] On April 7, 2022, the defendant, then represented by counsel, filed a motion to reargue, claiming, inter alia, that the court improperly had determined the amount of the plaintiff's child support arrearage. The court held argument on the motion to reargue on July 19, 2022. On October 24, 2022, the court denied the

---

[4] The court also adjudicated a July 15, 2021 motion for contempt filed by the plaintiff with respect to the claiming of the children as dependents on the parties' tax returns. Although the court in its memorandum of decision ordered a credit to the plaintiff's child support arrearage, the court vacated the credit in its ruling on the defendant's motion to reargue.

motion to reargue in part as to the issue in the present appeal.[5] This appeal followed.

The defendant claims on appeal that the court improperly found that the plaintiff did not owe an arrearage for the period of July 1, 2019, through March 24, 2021, based on the court's misinterpretation of the June, 2017 order.[6] Specifically, she contends that, pursuant to the June, 2017 order, the plaintiff's $2600 monthly child support obligation remained in place until modified by the court. Thus, she argues that the plaintiff's unilateral reduction in his monthly support payments, prior to the court-ordered modification, violated the June, 2017 order. We agree with the defendant.

The June, 2017 order was stated in the parties' agreement resolving the defendant's motions for contempt and modification, which agreement was approved by and incorporated into the order of the court. An agreement that has been incorporated into a postdissolution order "must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look

[5] The court, however, corrected its calculation of child support due to include amounts owed but not paid for the three weeks prior to the hearing on the motion for contempt. The court issued a corrected child support arrearage determination of $2970.

[6] The defendant does not raise any claim of error on appeal with respect to the court's ruling regarding compliance with the March, 2021 order.

outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law. . . .

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 383, 107 A.3d 920 (2015).

Consistent with the foregoing principles, we begin with the relevant language of the June, 2017 order. The order first reflected the parties' agreement to remove the "true up" process contained within the parties' separation agreement. The order next stated that all arrears regarding child support and alimony were to be considered resolved, with neither party owing an arrearage as of June 30, 2017. The order then set the plaintiff's child support obligation at $2600 per month. Finally, the order required the plaintiff to pay "to the defendant, child support in the full monthly amount of $2600 through June 30, 2019. Thereafter, child support will be modified based on the . . . child support guidelines."

The terms of the order expressly contemplate the possibility of modification of the plaintiff's child support obligation after June 30, 2019. Modification of child support is governed by General Statutes § 46b-86 (a),

which provides in relevant part that "any final order for the periodic payment of . . . support . . . may, at any time thereafter, be . . . modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding . . . that the application of the guidelines would be inequitable or inappropriate. . . ." A self-calculation by the plaintiff of the amount of his child support obligation based on his understanding of the child support guidelines is inconsistent with the plain language of the order referencing modification. Accordingly, we conclude that the only fair and reasonable construction of the order stating that "child support will be modified based on the . . . child support guidelines" is an order contemplating a judicial determination of the plaintiff's child support obligation following consideration of the child support guidelines, as required by statute. See General Statutes § 46b-215b (a) ("[t]he . . . guidelines issued pursuant to section 46b-215a . . . shall be considered in all determinations of child support award amounts").

Consideration of the language used interpreted in light of the situation of the parties and the circumstances surrounding the issuance of the June, 2017 order also supports the conclusion that the $2600 payment was to remain in place until modified by the court. The June, 2017 order resolved the motions of the defendant for modification and contempt, which alleged that the "true up" process set forth in the parties' separation agreement was unworkable and that the plaintiff unilaterally had reduced his child support payment. The June, 2017 order removed, by agreement of the parties, the "true up" process and stated that all past arrears regarding child support and alimony were to be considered resolved. To construe the June, 2017 order as permitting

the plaintiff to self-calculate his child support obligation in accordance with his understanding of the child support guidelines cannot be reconciled with the removal of the "true up" process following the parties' inability to cooperatively perform that process.

Additionally, an interpretation of the June, 2017 order that would condone the plaintiff's unilateral modification of his child support payments solely "based on his understanding of the child support guidelines amount" would be inconsistent with the purpose of child support and its governing statutory scheme. "[A]lthough child support orders are made and enforced as incidents to divorce decrees . . . the minor children's right to parental support has an independent character, separate and apart from the terms of the support obligations as set out in the judgment of dissolution." (Internal quotation marks omitted.) *Kirwan* v. *Kirwan*, 185 Conn. App. 713, 731, 197 A.3d 1000 (2018). "[T]he statutory scheme regarding child support enforcement evinces a strong state policy of ensuring that minor children receive the support to which they are entitled. . . . Both state and national policy has been, and continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support. . . . Child support is now widely recognized as an essential component of an effective and comprehensive family income security strategy. . . . As with any income source, the effectiveness of child support in meeting the needs of children is, of necessity, increased when payments are made regularly and without interruption." (Citation omitted; internal quotation marks omitted.) *Kupersmith* v. *Kupersmith*, 146 Conn. App. 79, 92, 78 A.3d 860 (2013).

In the present case, neither party filed a motion for modification of the plaintiff's child support obligation until the defendant filed motions for modification and

contempt in September, 2020. It is undisputed that the plaintiff did not continue to make monthly payments of $2600 for the period of July 1, 2019, through March 24, 2021, but rather, as the court found, he "paid child support up through the court's March, 2021 order based on his understanding of the child support guidelines amount."[7] In its March, 2021 order resolving the defendant's motions for modification,[8] the court modified the plaintiff's child support obligation to $495 weekly prospectively. Because the plaintiff was obligated to pay $2600 monthly from July 1, 2019, until the modification in March, 2021, the plaintiff's reduced payments during that time period were not in compliance with the terms of the June, 2017 order, and the court erred in failing to determine the amount of the arrearage attributable to the plaintiff's noncompliance with the child support order.

Accordingly, we reverse the judgment of the trial court in part as to the defendant's motion for contempt and remand the matter for further proceedings thereon, limited to a new hearing to identify properly any arrearage owed to the defendant for the period of July 1,

---

[7] Although the court did not make factual findings as to the amount of child support paid by the plaintiff for the period of July 1, 2019, through March 24, 2021, the court admitted into evidence a copy of an email written and sent by the plaintiff to the defendant. The email stated: "So from July 2019 through Nov 2019 I made a mistake in payment and only paid $1,600 a month. Then for Dec 2019, I realized this and made the correct payment of $1,800. Then in Dec, I made a payment for $1,000 which would cover the 5 months of being short the $200 each month. Then July 2020, I made an additional payment for $4,275 because I made more than I projected when we were doing the support calculations for 2019. So that is a total of $14,075 for the half year of 2019, July-Dec 31, 2019. That is $2,345 a month Total for 2020 $21,600. That is $1,800 a month."

[8] During the hearing on the motion for contempt at issue in this appeal, the plaintiff argued that the claim for arrearages accumulated prior to the March, 2021 order implicitly had been rejected in the court's March, 2021 order based on the absence of any finding of an arrearage for that time period. The court rejected that argument, responding that the March, 2021 order did not "speak to arrearages for the prior years."

2019, through March 24, 2021, and to establish the terms for payment of that arrearage. See *Casiraghi* v. *Casiraghi*, 200 Conn. App. 771, 786 n.15, 241 A.3d 717 (2020) ("[e]ven in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order" (internal quotation marks omitted)).[9]

The judgment is reversed in part as to the defendant's motion for contempt and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

_____

[9] The defendant also claims on appeal, in the alternative, that the court erred in failing to find the plaintiff in contempt. "[C]ivil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . In part because the contempt remedy is particularly harsh . . . such punishment should not rest upon implication or conjecture, [and] the language [of the court order] declaring . . . rights should be clear, or imposing burdens [should be] specific and unequivocal, so that the parties may not be misled thereby. . . . To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . . It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive." (Citations omitted; internal quotation marks omitted.) *Puff* v. *Puff*, 334 Conn. 341, 364–65, 222 A.3d 493 (2020).

"A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 529, 710 A.2d 757 (1998).

In the present case, the plaintiff advocated, and the trial court accepted, an interpretation of the June, 2017 order that condoned the plaintiff's self-calculation of his child support obligation in accordance with his understanding of the child support guidelines. The court found that the defendant failed to prove a violation of the order, "let alone that he violated the order

wilfully." Although we disagree with the trial court's construction of the June, 2017 order, in light of the misunderstanding over the terms of that order, the defendant has not shown that the court abused its discretion in declining to find the plaintiff in contempt. Accordingly, the scope of the remand is limited to a new hearing to identify properly any arrearage and to establish the terms for payment of that arrearage.